UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RAPID TOX SCREEN LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:15-CV-3632-B |
| | § | |
| CIGNA HEALTHCARE OF TEXAS | § | |
| INC., CONNECTICUT GENERAL | § | |
| LIFE INSURANCE COMPANY, and | § | |
| CIGNA HEALTH AND LIFE | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss the Second Amended Complaint. Doc.
34. For the reasons that follow, the Court **DENIES** Defendants' Motion.

## I.

## BACKGROUND[1]

This case centers on an insurance dispute. Plaintiff Rapid Tox Screen, LLC (Rapid Tox)
brings this suit seeking benefits it believes were wrongfully denied by Defendants CIGNA Healthcare
of Texas, Inc., Connecticut General Life Insurance Company, and Cigna Health and Life Insurance
Company (collectively CIGNA).

---

[1]The Court draws its factual account from Plaintiff's Second Amended Complaint (Doc. 31)
[hereinafter Pl.'s SAC], as well as from the parties' briefing on the Motion to Dismiss before the Court today.
Any contested facts will be noted as the contention of particular party.

Plaintiff owns and operates a toxicology laboratory that provides clinical and toxicology laboratory services for medical purposes. Doc. 31, Pl.'s SAC ¶ 9. Medical patients are referred to Plaintiff by their physicians. *Id.* Some patients who receive testing services from Plaintiff are members of employee benefits plans administered or insured[2] by CIGNA. Doc. 34, Defs.' Mot. to Dismiss ¶ 1.

The benefits available for members of CIGNA plans differ depending on whether the services are provided by an "in-network" facility or an "out-of-network" facility. Doc. 31, Pl.'s SAC ¶ 13. Plaintiff is an out-of-network facility. *Id.* ¶ 15; Doc. 34, Defs.' Mot. to Dismiss ¶ 1. An out-of-network facility has no contractual agreement with CIGNA. Doc. 31, Pl.'s SAC ¶ 14. Patients may still choose to use the services of an out-of-network facility, however, and CIGNA promises to pay the usual, customary, or reasonable charges of an out-of-network facility. *Id.*[3]

As stated above, Plaintiff's customers are typically referred to Plaintiff by their physicians. Doc. 31, Pl.'s SAC ¶ 9.When a physician believes that a diagnostic test is medically necessary for treating a patient's health issues, the physician fills out a laboratory test requisition form. *Id.* ¶ 16. According to Plaintiff, the physician provides a patient's diagnosis and what tests are needed. *Id.* Then, on the same form, the patient allegedly executes an assignment of their insurance benefits to Plaintiff so CIGNA can pay Plaintiff directly for the services it provides. *Id.* As an out-of-network

---

[2]CIGNA provides several kinds of services. For example, CIGNA insures health benefit plans for individuals and entities. Doc. 31, Pl.'s SAC ¶ 10. But CIGNA also provides administrative services for entities that insure their own health benefit plans. *Id.* In the second scenario, entities contract with third-party administrators, like CIGNA, to provide administrative oversight of the plan. *Id.*; *see also Biohealth Med. Lab., Inc. v. CIGNA Health and Life Ins. Co.*, — F. App'x —, 2017 WL 3475030, at *1 (11th Cir. 2017).

[3]By contrast, an in-network facility has a contract with CIGNA. Doc. 31, Pl.'s SAC ¶ 13. Those facilities that enter into a contract gain the opportunity to provide services to a large number of CIGNA members by agreeing to accept a lower than usual rate for their services. *Id.*

facility, Plaintiff can recover its "usual, customary, and reasonable fee" for the services it provides CIGNA members. *Id.* ¶ 19. For some amount of time, CIGNA paid Plaintiff for the claims Plaintiff submitted in accordance with this process. *Id.* ¶ 34.

If the service provided by Plaintiff costs more than what CIGNA reimburses, the patients are liable for any unpaid amounts. *Id.* ¶ 21. Plaintiff states that it has policies and procedures that dictate how it collects unpaid balances. *Id.* This includes waiting to bill patients for any unpaid amount until Plaintiff receives a final adjudication of the claim by CIGNA. *Id.* ¶ 23.

Plaintiff alleges that in January 2014, CIGNA unilaterally and without negotiation began reducing the amount it paid to Plaintiff. *Id.* ¶ 20. Plaintiff also alleges that CIGNA began to delay processing claims. *Id.* ¶ 23. According to Plaintiff, this also caused delay in collecting unpaid benefits directly from patients because Plaintiff's policy is to wait for CIGNA to make a final adjudication before billing patients. *Id.*

Plaintiff contends that in January 2015, Plaintiff's claims were moved from CIGNA's regular claims handling process to CIGNA's Special Investigations Unit. *Id.* ¶ 24. Plaintiff argues that this, too, caused delays. *Id.* Plaintiff then alleges that in May 2015, CIGNA stopped payments and demanded recoupment of certain previously paid claims. *Id.* ¶ 25. CIGNA allegedly wrote a letter in June 2015 explaining itself and accusing Plaintiff of engaging in fee-forgiveness.[4] *Id.* ¶ 26. To some extent, Plaintiff appears to concede that it participated in some fee-forgiveness because it states that

---

[4]Plaintiff provides that fee-forgiveness means waiving in full or in part the amount patients owe Plaintiff after Plaintiff gets paid from CIGNA. Doc. 31, Pl.'s SAC ¶ 26. CIGNA allegedly pointed to standard language in CIGNA members' plan documents that excludes from coverage charges that the CIGNA member is not obligated to pay. *Id.* ¶ 27. Therefore, if Plaintiff engaged in fee-forgiveness, where it didn't really charge customers for the unpaid amounts, then CIGNA might be making payments that would not technically be covered. *See id.* Plaintiff interprets Defendants' finding as meaning that CIGNA could wait to reimburse any portion of a claim until the CIGNA members paid their obligation. *Id.*

for patients unwilling to pay, Plaintiff chooses not to spend its resources in "hounding patients" and that it is unreasonable to "spend[ ] good money chasing bad money." *Id.* ¶ 33. Based on CIGNA's accusation of fee-forgiveness, it initiated a "fraud flag" and allegedly denied all further claims made by Plaintiff. *Id.* ¶ 26. Plaintiff notes, however, that it believes CIGNA initiated the fraud flag in January 2015. *Id.* Plaintiff states that CIGNA determined that it had overpaid Plaintiff in the amount of $5,332,216.25. *Id.* ¶ 32.

Besides initiating a fraud flag, CIGNA also allegedly imposed extra requirements on Plaintiff before Plaintiff could be paid. *Id.* ¶ 28. Specifically, when Plaintiff submitted claims for benefits, it would have to also provide CIGNA with documentary proof of the patients' payment for the services. *Id.* Essentially, before the fraud flag, Plaintiff waited to receive payment from CIGNA before going after the patients for any unpaid amount. After the fraud flag, Plaintiff was allegedly required to switch the order and demand payment from patients before submitting the claims to CIGNA for payment. Plaintiff believes that this requirement harmed its business and is unlawful. *Id.* ¶ 30.

As a result of CIGNA's allegedly improper claim processing, improper denials, and improper unilateral reduction of payments, Plaintiff asserts that it has suffered damages in excess of $13 million. *Id.* ¶ 37. Plaintiff originally filed suit in November 2015, but the Court granted CIGNA's Motion to Dismiss and allowed Plaintiff to replead, finding that "permitting Plaintiff to replead its Original Complaint, informed by the detailed grounds set forth in CIGNA's Motion to Dismiss, would significantly aid both parties' efforts toward efficiently resolving this case." Doc. 22, Mem. Op. & Order 1. Plaintiff filed an Amended Complaint (Doc. 26) in compliance with that Order, and then moved for leave to file its SAC. Doc. 29, Mot. for Leave. The Court granted Plaintiff leave, and Plaintiff filed its SAC that is at issue today. Doc. 31, Pl.'s SAC.

In the SAC, Plaintiff alleges the following causes of action under ERISA: (1) breach of plan provisions for benefits; (2) denial of full and fair review; (3) violation of claims procedures; (4) clarification of rights under plan terms; and (5) attorneys' fees. *Id.* ¶¶ 40–65. Plaintiff also brought the following non-ERISA claims: (6) breach of contract; (7) money had and received; (8) theft of services; (9) negligent misrepresentation; (10) bad faith insurance practices; (11) deceptive insurance practices; (12) violations of the Texas Prompt Payment Act; and (13) promissory estoppel. *Id.* ¶¶ 66–114.

After Plaintiff filed its SAC, CIGNA filed its Motion to Dismiss (Doc. 34). Plaintiff filed a Response (Doc. 41), and CIGNA filed a Reply (Doc. 44). The Motion is therefore ripe for the Court's review.

## II.

## LEGAL STANDARD

A.   *Federal Rule of Civil Procedure 12(b)(1)*

"'Federal courts are courts of limited jurisdiction.'" *MacKenzie v. Castro*, No. 3:15-cv-0752-D, 2016 WL 3906084, at *2 (N.D. Tex. July 19, 2016) (quoting *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998)). For that reason, they can adjudicate claims only when subject matter jurisdiction "is expressly conferred by the Constitution and federal statute. Federal Rule of Civil Procedure 12(b)(1) provides the vehicle through which" a party may challenge that jurisdiction. *Armstrong v. Tygart*, 886 F. Supp. 2d 572, 584 (W.D. Tex. 2012) (internal citations omitted). "Standing is an issue of subject matter jurisdiction, and thus can be contested by a Rule 12(b)(1) motion to dismiss." *Little v. Tex. Attorney Gen.*, No. 3:14-cv-3089-D, 2015 WL 5613321, at *2 n.5

(N.D. Tex. Sept. 24, 2015) (citing *Lee v. Verizon Commc'ns Inc.*, 954 F. Supp. 2d 486, 496 (N.D. Tex. 2013)).

"A Rule 12(b)(1) motion can mount either a facial or factual challenge." *MacKenzie*, 2016 WL 3906084, at *2. A facial challenge occurs "when a party files a Rule 12(b)(1) motion without including evidence." *Id.* A factual challenge, by contrast, occurs when a party supports its Rule 12(b)(1) motion with evidence. *Id.*

In both cases, the burden of proof "'is on the party asserting jurisdiction.'" *Id.* (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam)). So Plaintiff must prove jurisdiction exists. Yet that is no high bar: "'[I]t is extremely difficult to dismiss a claim for lack of subject matter jurisdiction.'" *Santerre v. AGIP Petrol. Co.*, 45 F. Supp. 2d 558, 566 (S.D. Tex. 1999) (quoting *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1260 (11th Cir. 1997)).

When a party makes a Rule 12(b)(1) motion without including evidence, the challenge to subject matter jurisdiction is facial. *Hunter v. Branch Banking & Trust Co.*, No. 3:12-cv-2437-D, 2013 WL 607151, at *2 (N.D. Tex. Feb. 19, 2013) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)). Here, Defendants filed their Rule 12(b)(1) motion without any additional evidence, so it is considered a facial attack. Thus, the Court may consider just "the allegations in the complaint because they are presumed to be true." *Paterson*, 644 F.2d at 523. And if they sufficiently allege a claim for recovery, then the complaint stands and the court must entertain the suit. *Id.*

B.     *Federal Rule of Civil Procedure 12(b)(6)*

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim

upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted).

### III.

### ANALYSIS

#### A.     *Plaintiff's Standing to Sue under ERISA*

Defendants challenge Plaintiff's standing to sue under ERISA. Doc. 35, Defs.' Mem. of Law Supp. of Defs.' Mot. to Dismiss Pl.'s SAC 6 [hereinafter Defs.' Br.]. Defendants contend that Plaintiff failed to obtain a valid assignment of benefits from CIGNA members. *Id.* at 7. Therefore, Defendants

reason, Plaintiff does not have the derivative standing necessary to assert claims against Defendants on behalf of patients who are CIGNA members. *Id.* Specifically, Defendants argue that: (1) Plaintiff failed to allege that each member willingly and knowingly assigned their benefits to Plaintiff; (2) Plaintiff failed to account for the possibility that the assignment language may have changed over time; and (3) as an alternative, Plaintiff obtained only the right to receive payment of insurance proceeds and not other claims, like benefits under self-funded plans or claims for breach of fiduciary duty. *Id.* at 7–8.

A party may obtain standing derivatively from the standing of another party. *Mid-Town Surgical Ctr., L.L.P. v. Humana Health Plan of Tex., Inc.*, 16 F. Supp. 3d 767, 774 (S.D. Tex. 2014). "It is well established that a healthcare provider, though not a statutorily designated ERISA beneficiary, may obtain standing to sue derivatively to enforce an ERISA plan beneficiary's claim." *Harris Methodist Fort Worth v. Sales Support Servs. Inc. Emp. Health Care Plan*, 426 F.3d 330, 333–34 (5th Cir. 2005) (citing *Tango Transp. v. Healthcare Fin. Servs. LLC*, 322 F.3d 888, 893 (5th Cir. 2003)).

For a third-party to obtain standing to assert an ERISA claim, the claim "must be expressly assigned to the third-party." *Mid-Town Surgical Ctr.*, 16 F. Supp. 3d at 774 (citing *Tex. Life, Accident, Health & Hosp. Serv. Ins. Guar. Ass'n v. Gaylord Entm't Co.*, 105 F.3d 210, 218 (5th Cir. 1997) ("[O]nly an express and knowing assignment of an ERISA fiduciary breach claim is valid.")). "This is so because a plan participant's assignee is considered a 'beneficiary' of the plan and, therefore, may bring litigation to collect benefits owed under the plan." *N. Cypress Med. Ctr. Operating Co. v. CIGNA Healthcare*, 782 F. Supp. 2d 294, 300 (S.D. Tex. 2011) (citing 29 U.S.C. § 1132(a)(1)).

An assignment is "a manifestation to another person by the owner of a right indicating his intention to transfer, without further action or manifestation of intention, his right to such other person or third person." *Harris Methodist,* 426 F.3d at 334 (quoting *Wolters Vill. Mgmt. Co. v. Merchs. & Planters Nat'l Bank of Sherman*, 223 F.2d 793, 798 (5th Cir. 1955)). "Once a valid assignment is made, 'the assignor's right to performance by the obligor is extinguished in whole or in part and the assignee acquires a right to such performance.'" *Id.* (citing Restatement (Second) of Contracts § 317(1)).

Plaintiff's SAC alleges the following:

> The Member's physician or care provider will complete a laboratory test requisition form providing the Cigna Member's diagnosis, test orders, and other information necessary for Rapid Tox to access[ ] and process the Cigna Member's specimen. The Cigna Members on the same requisition form also expressly and knowingly execute an assignment of their insurance benefits for the provided laboratory services by Rapid Tox along with authorization for Cigna to pay Rapid Tox directly through the assignment contained on the requisition form.

Doc. 31, Pl.'s SAC ¶ 16. Plaintiff provides an excerpt from a requisition form as an example of what CIGNA members may have signed:

> The specimen identified on this form is my own. I have not adulterated it in anyway. I am voluntarily submitting this specimen for analysis by my healthcare provider and/or third party lab. I authorize the lab to release the results of this test to the ordering healthcare provider. The lab is authorized to bill my insurance provider and to receive payment of benefits for the tests my healthcare provider orders. I further authorize the lab and my healthcare provider to release to my insurance provider any medical information necessary to process this claim.

Doc. 31, Pl.'s SAC ¶ 17. The Court will consider each of Defendants' three standing arguments below.

## 1.  Express and Knowing Assignment of Rights

As discussed above, Defendants argue that Plaintiff lacks standing because it failed to allege that every member whose claim Plaintiff is pursuing knowingly and willingly assigned their benefits to Plaintiff. Doc. 35, Defs.' Br. 7. But in Plaintiff's SAC, Plaintiff alleges that patients "expressly and knowingly execute[d] an assignment of their insurance benefits for the provided laboratory services by [Plaintiff]." Doc. 31, Pl.'s SAC ¶ 16. This is sufficient for Plaintiff to withstand a facial attack on the Court's subject matter jurisdiction.[5] *See N. Cypress*, 782 F. Supp. 2d at 302–03 (finding a plaintiff's allegation "that it obtained an express assignment of benefits and rights from the plan participants" sufficient to withstand a 12(b)(1) facial attack); *see also Encompass Office Solutions, Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 948–49 (E.D. Tex. 2011) (finding that "derivative standing does not require express authorization to sue and that an assignment of the right to payment is enough to create standing").

## 2.  Assignment Language Changed Over Time

Defendants also focus on the language of the requisition forms that patients allegedly executed in assigning their rights to Plaintiff. Doc. 35, Defs.' Br. 7. In Plaintiff's SAC, Plaintiff states that the requisition forms used by Plaintiff "changed over time due to regulatory changes and

---

[5] In Defendants' Reply, Defendants seem to ask the Court to hold Plaintiff to a higher pleading standard. Doc. 44, Defs.' Reply 4. Specifically, Defendants argue that Plaintiff should have included facts from which it could be inferred that members reviewed and understood the purported assignments in the requisition forms, or that they were aware that Plaintiff would be submitting claims to their benefit plans for reimbursement. Doc. 44, Defs.' Reply 4. As discussed in *North Cypress*, a plaintiff is not required to plead additional elements regarding an individual's knowing or express consent. 782 F. Supp. 2d at 302–03. The court in *North Cypress* distinguished its decision from those requiring a higher showing. *Id.* at 302. For example, *Texas Life* held that a breach of fiduciary duty claim cannot be assigned by implication or by operation of law, so an express and knowing assignment had to be shown. 105 F.3d at 218. *North Cypress* determined that because the plaintiff was not relying on an implicit assignment or an assignment by operation of law like the plaintiff in *Texas Life*, the plaintiff in *North Cypress* had to allege only that it obtained an express assignment of benefits. *N. Cypress*, 782 F. Supp. 2d at 302–03.

changes in the clinical laboratory industry." Doc. 31, Pl.'s SAC ¶ 17. Instead of including every version of the requisition form in the SAC, Plaintiff includes an excerpt from one version. *Id.*

Defendants argue that without an allegation that every requisition form completed included a provision assigning benefits, the Court cannot infer that every patient at issue assigned their benefits to Plaintiff. Doc. 35, Defs.' Br. 7. In Defendants' Reply, however, they make clear that they are not arguing that Plaintiff is required to attach the assignments for every single claim. Doc. 44, Defs.' Reply 5. Instead, Defendants argue that Plaintiff is required to plead that each member "knowingly" assigned their rights and that providing the language of one of many requisition forms is insufficient. *Id.*[6]

First, unlike Defendants suggest, Plaintiff did allege that the CIGNA members "knowingly" executed an assignment of their insurance benefits. Doc. 31, Pl.'s SAC ¶ 16. Second, Defendants do not cite to any case law supporting their contention that Plaintiff is required to include more than one excerpt, or any excerpt, of an assignment at the pleading stage. The Court does not find Defendants' argument persuasive. Plaintiff is not required to attach the assignment to the complaint, and Plaintiff's allegations are sufficient to survive a 12(b)(1) facial attack. *See Grand Parkway Surgery Ctr., LLC v. Health Care Serv. Corp.*, No. H-15-0297, 2015 WL 3756492, at *2 (S.D. Tex. June 16,

_____

[6] Defendants also argue that Plaintiff's SAC is insufficient because to Defendant, it appears that the physicians—and not the patients—completed the requisition forms. Doc. 44, Defs.' Reply 3. This argument is not persuasive, however, because Plaintiff's SAC states that "[t]he Cigna Members on the same requisition form also expressly and knowingly execute an assignment of their insurance benefits." Doc. 31, Pl.'s SAC ¶ 16. This is enough to infer that the members, and not the physicians, executed the assignment. Even if the physicians had executed the assignments for the members, case law might support such an assignment, as the Fifth Circuit has held that an assignee of a health care provider has derivative standing so long as the health care provider had a valid assignment from the plan participant or beneficiary. *Tango Transp.*, 322 F.3d at 889 (5th Cir. 2003). As Plaintiff's SAC supports the allegation that the members themselves executed the assignments, the Court need not reach this issue.

2015) (stating that "[t]here is no requirement that Plaintiff attach each Assignment of Benefits to the Complaint").

### 3.   Standing to Sue for More than Plan Benefits

Finally, Defendants argue that even if Plaintiff has standing to sue for the recovery of benefits, Plaintiff has failed to allege that it was assigned the right to pursue non-benefit claims, like breach of fiduciary duty. Doc. 35, Defs.' Br. 7–8. In Plaintiff's SAC, it contains an excerpt from a requisition form that authorizes Plaintiff to "bill [a member's] insurance provider and to receive payment of benefits." Doc. 31, Pl.'s SAC ¶ 17. Defendants contend that more express language is necessary to assign the right to pursue other non-benefit claims. Doc. 35, Defs.' Br. 7–8.

A vast majority of courts have rejected the contention that an assignment of ERISA benefits claims assigns non-benefit rights. *Tex. Gen. Hosp., LP v. United Healthcare Servs., Inc.*, No. 3:15-cv-2096-M, 2016 WL 3541828, at *8 (N.D. Tex. June 28, 2016) (collecting cases) (citing *Sanctuary Surgical Ctr., Inc. v. Aetna Inc.*, 546 F. App'x 846, 852 (11th Cir. 2013) (holding that an assignee lacked standing to sue for a breach of fiduciary duty where a patient assigned only the right to receive benefits); *Mid-Town Surgical Ctr.*, 16 F. Supp. 3d at 775 (holding that an assignment of "surgical and/or Medical Benefits" was insufficient to assign non-benefits ERISA claims); *Grand Parkway*, 2015 WL 3756492, at *3 ("Assignments that do not refer specifically to fiduciary duty or other non-benefits ERISA claims do not assign non-benefits claims to the plaintiff.")).

But the assignments on which Plaintiff relies are not attached to the Complaint and are not before the Court, so the Court cannot determine whether any of the assignments include the specific assignment of non-benefits ERISA claims or assign only the ERISA claim for payment of benefits. *See Grand Parkway*, 2015 WL 3756492, at *3. While the single excerpt that Plaintiff does provide

suggests that Plaintiff was assigned solely the right to collect payment of benefits, the Court cannot make a determination at this point. Therefore, the Court does not decide at this stage of the proceeding whether the assignments specifically assign non-benefits ERISA claims. *See Grand Parkway*, 2015 WL 3756492, at *2–3 (denying a motion to dismiss for lack of jurisdiction and waiting for a later stage to decide whether an assignment assigned non-benefits ERISA claims because a plaintiff is not required to attach each assignment to the complaint).

Additionally, Defendants argue that the assignments, to the extent they adequately assigned rights to benefits, are limited to "insurance benefits," so any claims arising under a self-insured plan[7] would be beyond the scope of the assignment. Doc. 35, Defs.' Br. 9. Plaintiff rejects this analysis and argues that Defendants attempt to discard the self-insured claims' assignments based on a "technical definition between a 'plan' and an 'insurance policy.'" Doc. 41, Pl.'s Resp. 9. Plaintiff urges the Court to interpret the assignment, presumably the excerpt found in the SAC, and conclude that when it is interpreted in its ordinary and popular sense, there is little difference between a plan and an insurance policy. *Id.*

As discussed above, the Court is unable to make a determination regarding the scope of Plaintiff's assignment.[8] At this procedural posture, Plaintiff has alleged enough facts to establish

---

[7]In a self-funded plan, employers "bear[ ] the ultimate financial risk of paying benefits." *Biohealth Med. Lab.,* 2017 WL 3475030, at *1. Under these plans, an employer may contract with a third-party administrator (such as CIGNA) to administer the plan. *Id.* This is in contrast to an "insured" plan, or a traditional insurance plan, where an employer enters into a contract with an insurance company and the insurance company bears the ultimate financial risk of paying benefits for the employees. *Id.*

[8]Defendants cite to a district court's opinion from South Carolina that states that the "terms of the Consent Form do not cover self-funded employee benefit plans," so the Consent Form did not give the plaintiff derivative standing. *Med. Univ. Hosp. Auth./Med. Ctr. of the Med. Univ. of S.C. v. Oceana Resorts, LLC,* No. 2:11-cv-1522, 2012 WL 683938, at *8 (D.S.C. Mar. 2, 2012). But that court reached its decision in the context of a motion for summary judgment where it could examine the actual consent form at issue. In *Encompass Office Solutions, Inc. v. Conn. Gen. Life Ins. Co.,* No. 3:11-cv-2487, 2012 WL 3030376, at *5 (N.D. Tex. July 25, 2012), the plaintiff attached the assignment form to the complaint, so the court could

standing. Defendants are not, however, precluded from raising this argument again on summary judgment.

For the reasons discussed above, the Court finds that Plaintiff's SAC is sufficient to survive a Rule 12(b)(1) facial attack. Therefore, at this stage of the proceedings, the Court concludes that Plaintiff has standing to assert its ERISA claims, and the Court **DENIES** Defendants' Motion to Dismiss under 12(b)(1).

B.    *Sufficiency of Plaintiff's SAC*

Defendants seek to dismiss under Rule 12(b)(6) the following claims: (1) denial of full and fair review in violation of ERISA § 503; (2) violation of claims procedures under ERISA; (3) breach of contract; (4) money had and received; (5) theft of services; (6) negligent misrepresentation; (7) deceptive insurance practices; (8) Texas Prompt Payment Act violation; and (9) promissory estoppel. The Court will consider each cause of action below. Doc. 34, Defs.' Mot. to Dismiss ¶¶ 8–16.

1.    ERISA Claims

i.    *Failure to Exhaust Administrative Remedies*

Defendants appear to move to dismiss all of Plaintiff's ERISA claims based on Plaintiff's alleged failure to exhaust available administrative remedies. Doc. 35, Defs.' Br. 11–12. Specifically,

---

consider it in deciding the motion to dismiss. And in another case relied on by Defendants, the district court had the actual assignment language in front of it as well, so it could accurately assess the plaintiff's standing at the motion to dismiss stage. *See Biohealth Med. Lab.*, 2016 WL 375012, at *4. But since Defendants filed their Motion, the 11th Circuit has vacated the district court's dismissal of the plaintiff's claims for lack of standing because it was improper to interpret the contract at the motion to dismiss stage. *Biohealth Med. Lab.*, 2017 WL 3475030, at *3. Here, Defendants brought a facial attack, and Plaintiff did not attach any of the requisition forms as evidence to its SAC, as it was not required to do so. Therefore, the Court determines it would be improper to decide the scope of Plaintiff's standing based on the contractual language at the motion to dismiss stage.

Defendants contend that Plaintiff's allegation that it either engaged in the required appeals process or is presently in the appeals process is insufficient. *Id.*

"Generally, the Fifth Circuit requires that 'claimants seeking benefits from an ERISA plan must first exhaust available administrative remedies under the plan before bringing suit to recover benefits.'" *N. Cypress*, 782 F. Supp. 2d at 303 (quoting *Bourgeois v. Pension Plan for Emps. of Santa Fe Int'l Corps.*, 215 F.3d 475, 479 (5th Cir. 2000)). "Exhaustion of administrative remedies, however, is not a jurisdictional bar; it is an affirmative defense." *Id.* (quoting *Am. Surgical Assistants, Inc. v. Great W. Healthcare of Tex., Inc.*, H-09-0646, 2010 WL 565283, at *2 (S.D. Tex. Feb. 17, 2010)). And "a complaint is not subject to dismissal under Rule 12(b)(6) because it fails to allege facts disproving a possible affirmative defense." *Id.* at 304 (citing *Am. Surgical Assistants*, 2010 WL 565283, at *2). Therefore, the Court does not find it appropriate to dismiss Plaintiff's ERISA claims for failure to allege exhaustion of administrative remedies. *Id.*

Even if dismissal were appropriate at this stage, Plaintiff has pled facts indicating that an exception to the exhaustion requirement applies. *See id.* The "Fifth Circuit has held that exceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust administrative remedies would be a patently futile course of action." *Tex. Gen. Hosp.*, 2016 WL 3541828, at *5. Plaintiff's SAC contains allegations that "CIGNA has stated that any attempt by Rapid Tox to reprocess or appeal these claims to demonstrate the patients' financial responsibility would be denied" and that Defendants delayed processing claims, failed to resolve underpayment issues on appeal, failed to provide a meaningful administrative processes and failed to comply with the substantive and procedural requirements of ERISA. Doc. 31, Pl.'s SAC ¶¶ 36, 39, 52. These are

sufficient to infer that an exception to pursuing administrative remedies may apply. The Court now turns to Defendants' contention that the Court should dismiss Plaintiff's ERISA claims under §§ 1132(a)(3) and 1133.

ii.      *29 U.S.C. § 1132(a)(3)*

Defendants move to dismiss Plaintiff's claim under 29 U.S.C. § 1132(a)(3). Doc. 35, Defs.' Br. 12. Defendants reason that this section is limited to equitable relief, and Plaintiff seeks only monetary relief. *Id.* at 13. But Plaintiff points to the SAC and indicates that it seeks declaratory and injunctive relief as well. Doc. 31, Pl.'s SAC ¶ 54. Defendants do not address this in their Reply. *See* Doc. 44, Defs.' Reply. As Plaintiff does seek equitable relief, the Court **DENIES** Defendants' Motion to Dismiss with regard to 29 U.S.C. § 1132(a)(3).

iii.      *29 U.S.C. § 1133*

Defendants move to dismiss Plaintiff's claim under 29 U.S.C. § 1133 because Plaintiff failed to allege facts suggesting that Defendants failed to provide a full and fair review of the claims at issue. Doc. 35, Defs.' Br. 13. Indeed, Defendants point out that the SAC contains allegations showing Defendants provided Plaintiff with a written explanation setting forth the specific reason for the denial of its claims, citing to specific plan language on which they relied. *Id.*

Section 1133 provides:

> In accordance with regulations of the Secretary, every employee benefit plan shall–
> . . .
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133. And Plaintiff's SAC contains the following allegations:

Although Cigna is obligated to provide a "full and fair review" of denied claims pursuant to 29 U.S.C. § 1133 . . . Cigna has failed to do so by, among other actions: refusing to process and report out claims submitted by Rapid Tox; refusing to provide the specific reason or reasons for the denial of claims; refusing to provide the specific plan provisions relied upon to support its denial; refusing to provide the specific rule, guideline, or protocol relied upon in making the decision to deny claims; refusing to describe any additional material or information necessary to perfect a claim, such as the appropriate diagnosis/treatment code; refusing to notify the relevant parties that they are entitled to have, free of charge, all documents, records, and other information relevant to the claims for benefits; engaging in improper retroactive denial of claims; and refusing to provide a statement describing any voluntary appeals procedure available or a description of all required information to be given in connection with that procedure.

Doc. 31, Pl.'s SAC ¶ 50.

Plaintiff's allegations are sufficient to state a claim under § 1133. *See Clontz v. Life Ins. Co. of N. Am.*, No. 3:08-cv-1947-B, 2009 WL 1491203, at *4 (N.D. Tex. May 28, 2009) (finding that a plaintiff asserted facts alleging violations of § 1133 where it pled that the insurer: (1) failed to identify material or information necessary for him to perfect his appeal; (2) operated under a conflict of interest; (3) failed to have his claims reviewed by the proper health care official; and (4) utilized biased consultants to review claim files).[9] Therefore the Court **DENIES** CIGNA's Motion based on 29 U.S.C. § 1133.

    2.    Breach of Contract

Defendants' Motion to Dismiss argues that Plaintiff failed to identify the provisions of the contract Defendants allegedly breached. Doc. 35, Defs.' Br. 15. Defendants also allege that Plaintiff fails to point to a specific provision demonstrating that the services Plaintiff allegedly provided are,

---

[9]Whether Plaintiff's allegations rise to a level that would substantiate an award of substantive damages or prompt the Court to remand Plaintiff's claim to then receive a full and fair review is a question the Court does not address here, as that issue is more suited for resolution at the summary judgment stage. *Clontz*, 2009 WL 1491203, at *4.

in fact, covered under the relevant plan or policies. *Id.* Plaintiff's breach of contract claim in the SAC is as follows:

> The patients purchased plans or policies from Cigna, which included out-of-network benefits. These plans or policies are valid and enforceable contracts.
> . . .
> These enforceable contracts provided for reimbursement of medical expenses incurred by Cigna members at "usual, customary, and reasonable rates."
> . . .
> Once the laboratory services were performed by Rapid Tox, Cigna breached its contractual obligation to provide out-of-network benefits by denying coverage. Through the patients' assignment of benefits, this breach damages Rapid Tox as a result of lost benefits.

Doc. 31, Pl.'s SAC ¶¶ 68–70. As discussed above, the Court cannot determine whether Plaintiff has standing to sue for non-ERISA claims on behalf of CIGNA members. Therefore, for purposes of the 12(b)(6) analysis, the Court must conduct its analysis as if Plaintiff does have standing to sue for breach of contract on behalf of CIGNA members.

Under Texas law, "[t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (citing *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.)).

Plaintiff sufficiently pled its breach of contract claims. *Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*, 614 F. App'x 731, 739 (5th Cir. 2015) (finding that the district court should not have dismissed a breach of contract claim where the plaintiff pled that: (1) a valid contract existed; (2) the plaintiff performed by providing services; (3) the defendant breached a specific provision—that obligating it to pay claims for covered products and services; and (4) defendant's

breach caused damages and included an itemized spreadsheet summarizing those damages); *Grand Parkway*, 2015 WL 3756492, at *6 (finding a plaintiff's breach of contract claim was sufficiently pled even though the defendant argued that the plaintiff had to identify the specific contract terms that were breached, when the complaint alleged that contracts provided for reimbursement of medical expenses at usual and customary rates, and the plaintiff received less than the amount it was owed). Therefore, the Court **DENIES** Defendants' Motion to Dismiss based on Plaintiff's breach of contract claim.

### 3.    Money Had and Received

Defendants move to dismiss Plaintiff's money had and received claim on the basis that Plaintiff is not seeking to recover specific funds in Defendants' possession that Defendants received for the benefit of Plaintiff. Doc. 35, Defs.' Br. 15. Instead, Defendants argue, Plaintiff is just attempting to obtain payment for its services from Defendants' assets. *Id.* Defendants assert that this is not enough to infer that Plaintiff is the "legal owner" of the money. *Id.* at 16. In addition to the pleading deficiency, Defendants also argue that Plaintiff's recovery is barred by the economic loss doctrine because of Plaintiff's claims based in contract. *Id.*[10]

Plaintiff's claim in the SAC is as follows:

> CIGNA received payment of premiums and other amounts from CIGNA members as well as ERISA-plans using CIGNA's services for providing funding of their employees' healthcare needs.
> . . .

---

[10]The Court does not find this argument persuasive at this stage of the case. As discussed above, the Court cannot determine whether Plaintiff was assigned the right to proceed on non-ERISA claims. Therefore, there is the possibility that when the Court is able to consider evidence, it will find the breach of contract claim untenable. At this stage, however, Plaintiff's money had and received claim can survive as an alternative to Plaintiff's breach of contract claim. *See Total Rx Care, LLC v. Great N. Ins. Co.*, No. 3:16-cv-2965-B, 2017 WL 3034083, at *8 (N.D. Tex. July 17, 2017) (citing Fed. R. Civ. P. 8(d)(3); *Baisden v. I'm Ready Prods., Inc.*, No. H-08-0451, 2008 WL 2118170, at *10 (S.D. Tex. May 16, 2008)).

> CIGNA now illegally and illegitimately refuses to pay the amount owed for covered charges based upon reasonable and necessary medical care provided to CIGNA members out of the premium funds paid by Cigna Members and the Cigna Plans.
> . . .
> Under the terms of the plans and Rapid Tox's assignments of CIGNA member's claims, Rapid Tox is entitled to seek, collect and retain the payments CIGNA now retains from the premium funds paid by Cigna Members and the Cigna Plans.
> . . .
> The moneys retained by CIGNA, its plan sponsors, and employers belong in equity and good conscience to Rapid Tox for the reasonable and necessary covered services it provided.

Doc. 31, Pl.'s SAC ¶¶ 74–77.

A claim for money had and received is an equitable claim that is based on the justice of the case rather than on wrongdoing. *BAC Home Loans Servicing, LP v. Tex. Realty Holdings, LLC*, 901 F. Supp. 2d 884, 914 (S.D. Tex. 2012) (citing *Stonebridge Life Ins. Co. v. Pitts*, 236 S.W.3d 201, 203 n.1 (Tex. 2007)). It "may be maintained to prevent unjust enrichment when one person obtains money which in equity and good conscience belongs to another." *Id.* (quoting *H.E.B., L.L.C. v. Ardinger*, 369 S.W.3d 496, 507 (Tex. App.—Fort Worth 2012, no pet.)). As a general rule, a party cannot pursue equitable theories of recovery when an express contract governs the dispute. *Aldous v. Darwin Nat'l Assurance Co.*, No. 3:13-CV-3310-L, 2015 WL 1879677, at *5 (N.D. Tex. Apr. 24, 2015).

First, at the motion to dismiss stage, Plaintiff's money had and received claim can survive as an alternative to Plaintiff's breach of contract claim. *See supra* note 9. Second, taking Plaintiff's allegations as true, they are sufficient to state a claim for money had and received. *See Mid-Town Surgical Ctr.*, 2012 WL 3028107, at *4 (finding, in the context of overpayments, that a defendant's allegation that equity and good conscience called for all overpayments to be refunded because the overpayments rightfully belonged to the defendant was sufficient to state its counterclaim).

4.   Theft of Services

Defendants move to dismiss Plaintiff's theft of services claim on the basis that Plaintiff failed

to allege that Plaintiff provided any service directly to Defendants, as required. Doc. 35, Defs.' Br.

17. Instead, Defendants argue, Plaintiff alleges only that it provided services to patients. *Id.*

Additionally, Defendants argue that there is a bona fide dispute regarding the ownership of the

benefits, and a claim of theft cannot lie where there is a bona fide contractual dispute over ownership

of property. *Id.*[11] Plaintiff's claim in the SAC is as follows:

> Rapid Tox provided services to CIGNA members. Rapid Tox as partial compensation
> for the reasonable and necessary services provided received assignment of benefits
> from CIGNA members for CIGNA to provide compensation to Rapid Tox for
> covered services provided under CIGNA plans.
> . . .
> CIGNA intended to avoid payment of the medical services rendered to CIGNA
> members by intentionally and knowingly securing Rapid Tox's provision of medical
> services by agreeing to provide compensation and, after the service was rendered,
> failed to make payment after receiving notice from Rapid Tox demanding payment.

Doc. 31, Pl.'s SAC ¶ 82. The Texas Penal Code provides the following:

> A person commits theft of service if, with intent to avoid payment for service that the
> actor knows is provided only for compensation: . . . (2) having control over the
> disposition of services of another to which the actor is not entitled, the actor
> intentionally or knowingly diverts the other's services to the actor's own benefit or
> to the benefit of another not entitled to the services . . . (4) the actor intentionally
> or knowingly secures the performance of the service by agreeing to provide
> compensation and, after the service is rendered, fails to make full payment after
> receiving notice demanding payment.

Tex. Penal Code § 31.04(a).

The Court first notes that Plaintiff failed to cite to a specific statute or section of the statute

in its SAC. *See* Doc. 31, Pl.'s SAC ¶¶ 79–83. Plaintiff's Response, however, attempts to clarify that

---

[11]As discussed above, the Court does not find this type of argument persuasive at this procedural
posture of the case. *See supra* note 9.

it actually brings its Theft of Services claim under § 31.04(a)(2) and § 31.04(a)(4). Under these sections, Plaintiff has sufficiently pled a claim. *See Fisher v. Blue Cross Blue Shield of Tex.*, No. 3:10-cv-2652-L, 2011 WL 3417097, at *3 (N.D. Tex. Aug. 3, 2011) (finding that a plaintiff properly pled a claim for theft of services where it titled their cause of action "Theft of Services"). Therefore, the Court **DENIES** Defendants' Motion to Dismiss as to Plaintiff's Theft of Services claim.

5.     Negligent Misrepresentation

Defendants move to dismiss Plaintiff's negligent misrepresentation claim under the pleading standard of Rule 9(b). Doc. 35, Defs.' Br. 19–20. Defendants rely on a Fifth Circuit decision that states: "Although Rule 9(b) by its terms does not apply to negligent misrepresentation claims, this court has applied the heightened pleading requirements when the parties have not urged a separate focus on the negligent misrepresentation claims." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003) (citing *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)). As one district court has stated, "Rule 9(b) governs both claims unless the court can devise a simple redaction that removes allegations of fraud from the complaint but leaves a valid and intelligible negligent misrepresentation claim intact." *Encompass Office Solutions*, 775 F. Supp. 2d at 956. Here, however, Plaintiff brings no fraud claim at all and only a negligent misrepresentation claim. *See* Doc. 31, Pl.'s SAC. The Court is therefore not persuaded by Defendant's argument and will consider Plaintiff's negligent misrepresentation claim in light of Rule 8.

Defendants fail to analyze Plaintiff's negligent misrepresentation claim under Rule 8's pleading standard. *See* Doc. 35, Defs.' Br. Plaintiff's negligent misrepresentation claim is as follows:

Prior to the provision of medical services to CIGNA members, Rapid Tox contacted CIGNA to confirm the availability of coverage and benefits available to the CIGNA

members. CIGNA through its agents and employees confirmed coverage and the benefits available to CIGNA members seeking services through Rapid Tox.

. . .

These representations supplied for the guidance of Rapid Tox as to the availability of coverage and benefits available were false.

. . .

CIGNA did not exercise reasonable care or competence in obtaining or communicating the representations as to coverage and benefit availability to the specific CIGNA members.

. . .

Rapid Tox justifiably relied upon CIGNA's misrepresentations as to coverage and benefits available to CIGNA members.

. . .

As a proximate cause of CIGNA's negligent misrepresentations, Rapid Tox incurred damages.

Doc. 31, Pl.'s SAC ¶¶ 83–87.

Under Texas law, a plaintiff alleging negligent misrepresentation must prove the following: (1) the defendant made a representation in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391, 395–96 (5th Cir. 2005). The "false information contemplated in a negligent misrepresentation case must be a misstatement of an existing fact rather than a promise of future conduct." *Innova Hosp. San Antonio, L.P. v. Blue Cross and Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 604 (N.D. Tex. 2014).

From the facts provided, Plaintiff's allegations are sufficient to state a claim for negligent misrepresentation. *See Innova Hosp. San Antonio, L.P. v. Blue Cross and Blue Shield of Ga., Inc.*, No. 3:12-cv-1607-O, 2014 WL 10212850, at *13 (N.D. Tex. July 21, 2014) (finding plaintiffs sufficiently provided defendants with fair notice of the claim and grounds on which it rests by pleading that they

verified coverage by contacting the insurer, the insurer represented that the patients were covered without referencing the plan documents, and that plaintiffs relied on these representations); *Mid-Town Surgical Ctr.*, 2012 WL 1252512, at *2 (concluding that the plaintiff sufficiently pled a negligent misrepresentation claim when it stated that defendant "represented that its insureds/members were covered under the plans and further verified that the medical services to be provided were likewise covered"). Accordingly the Court **DENIES** Defendants' Motion to Dismiss based on Plaintiff's negligent misrepresentation claim.

6.     Texas Insurance Code

Defendants move to dismiss Plaintiff's three claims under the Texas Insurance Code: (1) bad faith insurance practices; (2) deceptive insurance practices; and (3) violations of the Texas Prompt Payment Act. Doc. 35, Defs.' Br. 20. Defendants argue that all three claims should be dismissed because Plaintiff has not established it was assigned the rights to proceed on non-ERISA claims or claims under self-funded plans. *Id.* But as discussed above, the Court cannot resolve these arguments at this point in the case without considering evidence. Therefore, in analyzing Plaintiff's SAC, the Court is assuming, without deciding, that Plaintiff has standing to move forward on non-ERISA claims and claims for benefits of self-funded plans. With this in mind, Defendants appear to contest only the bad faith insurance practices claims based on the pleadings. *Id.* at 20–21.

Defendants argue that Plaintiff's claim for bad faith insurance practices should be dismissed because the SAC fails to allege that coverage for Plaintiff's claims was reasonably clear, which is an element for a breach of the duty of good faith and fair dealing claim. *Id.* at 21. Plaintiff's SAC contains the following allegations:

> CIGNA owed Rapid Tox, as an assignee of its policyholders, a duty of good faith and
> fair dealing. . . . CIGNA breached its duty of good faith and fair dealing by improperly
> denying payment and/or delaying payment for claims made for medical services
> rendered to CIGNA members when coverage is reasonably clear. . . . CIGNA's
> breach of its duty of good faith and fair dealing proximately caused Rapid Tox injury.

Doc. 31, Pl.'s SAC ¶¶ 88–90.

While not cited, it appears that Plaintiff's claim is based on Tex. Ins. Code § 541.060(a)(2)(A), which prohibits insurers from "failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of . . . a claim with respect to which the insurer's liability has become reasonably clear." Liability under § 541 of the Texas Insurance Code is analyzed under the same standard as common-law bad faith claims. *See Hamilton Props. v. Am. Ins. Co.*, 643 F. App'x 437, 442 (5th Cir. 2016) (citing *Tex. Mut. Ins. Co. v. Sara Care Child Care Ctr., Inc.*, 324 S.W.3d 305, 317 (Tex. App.—El Paso 2010, pet. denied)).

An insurer breaches its common law duty of good faith and fair dealing "if the insurer knew or should have known that it was reasonably clear that the claim was covered," but nevertheless denied or unreasonably delayed paying it. *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 55–56 (Tex. 1997). Whether there is a reasonable basis for denying a claim is evaluated by the facts before the insurer denied the claim. *Luna v. Nationwide Prop. and Cas. Ins. Co.*, 798 F. Supp. 2d 821, 830 (S.D. Tex. 2011) (citing *Viles v. Sec. Nat. Ins. Co.*, 788 S.W.3d 566, 567 (Tex. 1990)).

Plaintiff's Response argues that it does allege coverage was reasonably clear. Doc. 41, Pl.'s Resp. 20. The Response also argues that facts alleged concerning Defendants' payment of similar claims in the past supports Plaintiff's assertion that coverage for the disputed claims was reasonably clear. *Id.* at 20–21. Plaintiff's SAC also alleges that Defendants confirmed that the medical services were covered. Doc. 31, Pl.'s SAC ¶ 83. At the motion to dismiss stage, the Court finds that Plaintiff's

allegations are sufficient to state a claim for bad faith insurance practices under the Texas Insurance Code. Accordingly, the Court **DENIES** Defendants' Motion to Dismiss as to the Texas Insurance Code claims.

7.   Promissory Estoppel

Defendants move to dismiss Plaintiff's promissory estoppel claim because it failed to plead the requisite "definite, unconditional promise" for payment of benefits. Doc. 35, Defs.' Br. 22. Defendants also contest the amount of detail Plaintiff provided. *Id.* And Defendants argue that the claim should be dismissed because it rests on the same promises covered in Plaintiff's breach of contract claim. *Id.* at 22–23.[12]

Plaintiff's SAC contains the following allegations:

Before processing any patient specimen, Rapid Tox contacted Cigna or the contracted agent that is listed on each member's insurance card to confirm whether coverage was available for the scheduled services and to obtain the specific coverage details and benefits for that patient's insurance policy or Plan.
. . .
Defendants represented to Rapid Tox that the laboratory testing sought by the Cigna Members were covered under the Plans or Policies, and that the fees associated with that testing were Covered Charges under the Plans. Based on Defendants' or their agents' statements . . . Rapid Tox reasonably understood that some payment would be forthcoming for the services provided by Rapid Tox.
. . .
[R]eliance was foreseeable, as Defendants' agents' representations were made in the context of telephone calls from Rapid Tox's billing agents to verify coverage prior to specimens being analyzed.
. . .
Based upon and in reliance on these representations, Rapid Tox provided services to Cigna Members.
. . .
Rapid Tox's reliance upon Cigna's coverage . . . was detrimental to Rapid Tox's business operations and cash flow because Rapid Tox did not require patients to

---

[12]As discussed above, the Court does not find this type of argument persuasive at this procedural posture of the case. *See supra* note 9.

make alternative payment arrangements when specimens were submitted to Rapid Tox for processing.

Doc. 31, Pl.'s SAC ¶¶ 106, 108, 110–12.

To demonstrate a plausible claim for promissory estoppel under Texas law, Plaintiff must show: "(1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment." *MetroplexCore, L.L.C. v. Parsons Transp., Inc.*, 743 F.3d 964, 977 (5th Cir. 2014) (quoting *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983)). "Vague and indefinite statements that amount to no more than speculation about future events . . . are insufficient to support a claim for promissory estoppel." *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 654 F. Supp. 2d 536, 544 (N.D. Tex. 2009).

As argued by Plaintiff in its Response, other courts have held that similar complaints to Plaintiff's are adequate to state a claim for promissory estoppel. *See Tex. Gen. Hosp.*, 2016 WL 3541828, at *12 (collecting cases) (concluding that the plaintiff's allegations stated a claim for promissory estoppel where the plaintiff alleged that: (1) before rendering medical services, it would seek coverage verification; (2) the plaintiff provided medical services in reliance on the verification; (3) without verification, the plaintiff would not have provided the services; (4) reliance was foreseeable because the plaintiff had no other way to learn whether the insurance provider considered certain services covered; and (5) as a result of the plaintiff's reliance, it suffered injury).

Viewing all allegations in the SAC as true, the Court concludes that Plaintiff's allegations adequately state a promissory estoppel claim under Texas law. *See id.* Plaintiff alleges a promise, foreseeability of reliance by Defendants, Plaintiff's reliance on Defendants' promises, and that

reliance was to Plaintiff's detriment. Therefore, the Court **DENIES** Defendants' Motion to Dismiss as to Plaintiff's promissory estoppel claim.

## IV.

## CONCLUSION

For the reasons stated above, the Court **DENIES** Defendants' Motion to Dismiss. Doc. 34. Specifically, the Court **DENIES** Defendants' Motion to Dismiss based on Federal Rule of Civil Procedure 12(b)(1). And the Court **DENIES** Defendants' Motion to Dismiss based on Federal Rule of Civil Procedure 12(b)(6).

SO ORDERED.

SIGNED: August 24, 2017.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE